IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Sophia Meimaroglou | ) | No. 08-18941 |
| | ) | |
| Debtors. | ) | Hon. Jaqueline P. Cox |

**FINAL ORDER APPROVING AND AUTHORIZING DEBTOR'S
USE OF CASH COLLATERAL FOR THE PERIOD COMMENCING JUNE 1, 2009**

This cause came on to be heard upon the motion ("the Motion") of Debtor Sophia Meimaroglou ("Debtor"), for the entry of an order approving Debtor's use of cash collateral and providing adequate protection therefor to NGN, LLC and WFN, LLC (sometimes referred to collectively in this Order as "Lenders"). In order to avoid immediate and irreparable harm to Debtor's bankruptcy estate, Debtor requested use of all rents, profits, and income (all of which, as set forth below, constitutes Lenders' cash collateral) generated in connection with the operation of certain real properties owned by Debtor (the Fargo Property and the Greenview Property, as defined below). Such rents, income, and profits are referred to in this Order as the "Rents."

Upon review and consideration of the Debtor's Motion, and the Court having heard evidence on May 22, 2009, in relation to Lenders' request for relief from the automatic stay, concerning the nature and extent of Lenders' claims, and based upon the pleadings and representations of counsel, the Court, after due deliberation and consideration and sufficient cause appearing therefore, has concluded to permit use of the cash collateral by Debtor for Debtor's operations and administration of her estate on the terms stated in this Order, and this Order shall become effective immediately upon its entry pursuant to Rules 7062 and 9014 of the Federal Rules of Bankruptcy Procedure.

## STIPULATIONS OF THE PARTIES
### (From Relief From Stay Hearing ("the Stay Hearing") On May 22, 2009)

A. On July 24, 2008 (the "Petition Date"), Debtor commenced this voluntary case under Chapter 11 of the United States Bankruptcy Code (the "Code").

B. Since the Petition Date, Debtor has remained in possession of her assets and has continued to operate and manage her assets as a debtor in possession pursuant to Code §§ 1107 and 1108. No committee of creditors has been appointed in this case.

C. This Court has subject matter jurisdiction over the Motion pursuant to 28 U.S.C. § 157. Consideration of the Motions is a core proceeding pursuant to 28 U.S.C. § 157(b).

D. Venue of the Debtor's cases and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

E. On July 24, 2008 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Debtor is presently operating as a debtor-in-possession under Sections 1107 and 1108 of the Bankruptcy Code under jurisdiction of this Court.

F. Neither an examiner nor trustee has been appointed in this case. No official committee representing any of the unsecured creditors has been appointed.

G. Prior to the Petition Date, Broadway Bank ("Broadway") made certain loans (collectively, the "Loans") to Debtor secured by certain mortgages (collectively, the "Mortgages") against certain properties (collectively, the "Properties") owned by Debtor.

H. On or about August 25, 2000, Debtor executed and delivered to Broadway a Promissory Note evidencing a loan (the "WFN Loan") in the original principal amount of $1,950,000.00 (the "WFN Note"), a true and correct copy of which was admitted by the Court at the Stay Hearing as Exhibit 1.

I. On or about August 25, 2000, to secure the WFN Note, Debtor executed and delivered to Broadway a Mortgage (the "Fargo Senior Mortgage"), granting a first priority lien against real estate and improvements located at and commonly known as 1456-62 W. Fargo, Chicago, Illinois (the "Fargo Property"), a true and correct copy of which was admitted at the Stay Hearing as Exhibit 2. The Fargo Senior Mortgage was recorded with the Cook County, Illinois Recorder of Deeds (the "Recorder") on October 12, 2000, as Document Number 00797713.

J. On or about August 25, 2000, to further secure the WFN Note, Debtor executed and delivered to Broadway an Assignment of Rents (the "Fargo Senior Assignment of Rents"), granting a first priority lien and security interest in and to the rents, revenues, income, issues, profits and proceeds of the Fargo Property. The Fargo Senior Assignment of Rents was recorded with the Recorder on October 12, 2000, as Document Number 00797714. A true and correct copy of the Fargo Senior Assignment of Rents was admitted at the Stay Hearing as Exhibit 3.

K. On or about July 27, 2001, Debtor executed and delivered to Broadway a Promissory Note (the "NGN Note") evidencing a loan (the "NGN Loan") in the original principal amount of $2,400,000.00 (the NGN Note, together with the WFN Note, the "Notes"), a true and correct copy of which was admitted at the Stay Hearing as Exhibit 10.

L. On or about July 27, 2001, to secure the NGN Note, Debtor executed and delivered to Broadway a Mortgage (as thereafter amended on January 10, 2003, the "Greenview Mortgage"), granting a first priority lien against real estate and improvements located at and commonly known as 7450-56 N. Greenview, Chicago, Illinois (the "Greenview Property"), a true and correct copy of which was admitted at the Stay Hearing as Exhibit 11. The Greenview Mortgage was recorded with the Recorder on July 31, 2001, as Document Number 0010689437, and the amendment thereto was recorded with the Recorder on January 10, 2003, as Document Number 0030045997.

M. On or about July 27, 2001, to further secure the NGN Note, Debtor executed and delivered to Broadway an Assignment of Rents (the "Greenview Assignment of Rents"), granting a first priority lien and security interest in and to the rents, revenues, income, issues, profits and proceeds of the Greenview Property. The Greenview Assignment of Rents was recorded with the Recorder on July 31, 2001, as Document Number 0010689438, and was re-recorded with the Recorder on January 10, 2003, as Document Number 0030045998. A true and correct copy of the Greenview Assignment of Rents was admitted at the Stay Hearing as Exhibit 12.

N. On or about July 27, 2001, to secure the NGN Note, Debtor executed and delivered to Broadway a Mortgage (the "Fargo Junior Mortgage"), granting a second priority lien against the Fargo Property, a true and correct copy of which was admitted at the Stay Hearing as Exhibit 13. The Fargo Junior Mortgage was recorded with the Recorder on July 31, 2001, as Document Number 0010689417.

O. On or about July 27, 2001, to further secure the NGN Note, Debtor executed and delivered to Broadway an Assignment of Rents (the "Fargo Junior Assignment of Rents"), granting a second priority lien and security interest in and to the rents, revenues, income, issues, profits and

proceeds of the Fargo Property. The Fargo Junior Assignment of Rents was recorded with the Recorder on July 31, 2001, as Document Number 0010689418. A true and correct copy of the Fargo Junior Assignment of Rents was admitted at the Stay Hearing as Exhibit 14.

P. On or about December 29, 2006, Broadway executed and delivered the following documents to WFN relating to each of the following Properties: An assignment of the Fargo Mortgage and the Fargo Assignment of Rents (the "Fargo Senior Mortgage/AOR Assignment"), a true and correct copy of which was admitted at the Stay Hearing as Exhibit 21. The Fargo Senior Mortgage/AOR Assignment was recorded with the Recorder on January 11, 2007, as Document Number 0701144079.

Q. On or about December 29, 2006, Broadway executed and delivered the following documents to NGN relating to each of the following Properties: An assignment of the Greenview Mortgage and the Greenview Assignment of Rents (the "Greenview Mortgage/AOR Assignment"), a true and correct copy of which was admitted at the Stay Hearing as Exhibit 25. The Greenview Mortgage/AOR Assignment was duly recorded with the Recorder on January 2, 2007, as Document Number 0700231145. An assignment of the Fargo Junior Mortgage and the Fargo Junior Assignment of Rents (the "Fargo Junior Mortgage/AOR Assignment"), a true and correct copy of which was admitted at the Stay Hearing as Exhibit 26. The Fargo Junior Mortgage/AOR Assignment was recorded with the Recorder on January 2, 2007, as Document Number 0700231143.

R. As of the Petition Date, WFN's claim against Debtor under the WFN Note and the other loan documents, as set forth in the WFN Judgment, is $3,293,870.96. The Debtor disputes the claim.

S. As of the Petition Date, NGN's claim against Debtor under the NGN and the other loan documents, as set forth in the NGN Judgment, is $3,817,958.53. The Debtor disputes the claim.

**FINDINGS**

I. This Court has jurisdiction over this proceeding, the parties, and the property affected by this Order pursuant to 28 U.S.C. § 1334. This is a core proceeding within one or more of the subsections of 28 U.S.C § 157(b).

II. Debtor is unable to obtain unsecured financing, and Debtor's immediate ability to use the Rents per the submitted Four-Month Budget is necessary to avoid immediate and irreparable harm to the Properties and to Debtor's bankruptcy estate, with the changes indicated herein. In order to avoid immediate, irreparable harm to the estate, and pending a final hearing under Rules 4001(b) and (d), this Order shall be considered to be an order pursuant to Rule 4001(b)(2) authorizing the use of Rents subject to the terms of this Order between the Petition Date and the conclusion of such final hearing.

III. The NGN and WFN claims constitute facially valid and binding senior secured obligations of the Debtor; however, the Court is not herein passing on the extent of any offset, recoupment, counterclaim, deduction, defense or claim of any kind that the Debtor and/or any party in interest may have against NGN, WFN, or Broadway.

IV. In accordance with this Court's orders, the Debtor has paid adequate protection payments to the Lenders of between $3,000 and $6,000 per month for each of the Fargo and Greenview Properties, or a total of $6,000 to $12,000 per month collectively.

V. Until further order of Court, and as further adequate protection to Lenders, the Debtor shall pay into a separate Debtor-in-Possession Account and/or pay post petition taxes the sum of $121,000 for the period through the end of July, 2009 (payable $73,000 in July and $12,000 per month thereafter for four months thereafter), plus $11,000 per month thereafter until: (i)

confirmation of a plan; (ii) conversion of the case to Chapter 7; (iii) dismissal of the case; or (iv) the automatic stay is terminated in Lenders' favor.

## ORDER

1. The foregoing Stipulations and Findings are incorporated herein as though fully set forth in this "Order" section hereof.

2. The Debtor is by this Order authorized to use the Rents, including, as necessary, collection of rents, collection of accounts receivable, collection of payments on contracts, collection of every other obligation of any type owed to Debtor, and cash on hand (all of which shall be considered Rents under this Order) to make expenditures within the submitted Four-Month Budget except that in lieu of the monthly payments to the Lenders provided for therein, Debtor shall pay into a separate Debtor-in-Possession Account and/or pays post petition taxes the sum of $121,000 for the period through the end of July, 2009 (payable $73,000 in July and $12,000 per month thereafter for four months), plus $11,000 per month thereafter until: (i) confirmation of a plan; (ii) conversion of the case to Chapter 7; (iii) dismissal of the case; or (iv) the automatic stay is terminated in Lenders' favor. In addition, Lenders' objection to the use of their cash collateral to pay the Debtor's attorneys' fees is overruled, and the said fees awarded and to be awarded shall also be paid to the extent funds are available, except that no future awarded attorneys' fees may be paid from Lenders' cash collateral until (a) the entire aforementioned $121,000 is funded and (b) Debtor is current in her aforementioned $11,000 monthly payments.

3. Debtor may exceed the budgeted amount for any line item and/or the total budget for the applicable month in the Approved Monthly Budget by up to 10 percent without approval by Lenders or the Court and may make additional expenditures for true emergencies without further order of court, so long as she promptly notifies Lenders after such expenditure.

4. As adequate protection for their interests in the Properties, NGN and WFN are by this Order granted replacement liens on all assets of Debtor now or hereafter existing to the same extent as pre-petition. Such replacement liens are valid, enforceable, and fully perfected to the same extent as were Lenders' pre-petition liens without the need of any further filing, recordation or other action.

5. Debtor shall continue to maintain the Debtor-in-Possession accounts for each property that she is currently utilizing.

6. Debtor shall continue to maintain insurance on the Properties that constitute Lenders' collateral in reasonably equivalent amounts and coverage and those in existence during the preceding period of this bankruptcy case.

7. The determination of the application of any and all payments by Debtor to Lenders hereunder is subject to further order of the Court.

Dated this 15th day of October ~~August~~ 2009.

*Jacqueline P. Cox*

ENTER: J. Cox
       Judge